UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

BREANNA S. o/b/o A.D.S. a minor ,[1],  )
                                                                                                 )
   Plaintiff,                              )
                                                                         )
  v.                                 )         CIVIL NO. 3:21cv962
                                                                          )
KILOLO KIJAKAZI, Acting        )
Commissioner of Social Security,   )
                                                                          )
   Defendant.                            )

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1.     The claimant was born on August 11, 2019. Therefore, he was a newborn/young infant on January 16, 2020, the date application was filed, and is currently an older infant/toddler (20 CFR 416.926a(g)(2)).

2.     The claimant has not engaged in substantial gainful activity since January 16, 2020, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

3. The claimant has the following severe impairments: bilateral club foot, status post bilateral percutaneous heel cord tenotomy; and global developmental delay (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The undersigned finds that the claimant has not been disabled, as defined in the Social Security Act, since January 16, 2020, the date the application was filed (20 CFR 416.924(a)).

(Tr. 16-25).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed his opening brief on May 30, 2022.  On June 30, 2022 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on July 13, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

The Commissioner has developed a specific sequential evaluation process for determining whether a child claimant is disabled or not disabled. 20 C.F.R. § 416.924. The three-step process requires a child to show: (1) that he is not working; (2) that he has a "severe" impairment or combination of impairments; and (3) that his impairment or combination of impairments is of listing-level severity, that is, the impairment(s) meets or medically equals the severity of a set of criteria for an impairment in the listings, or functionally equals the listings. *See* 20 C.F.R. § 416.924.

If a child claimant is not working and has a severe impairment, the fact-finder must

2

determine if the child's impairment(s) meets or medically equals an impairment in the listings. 20 C.F.R. §§ 416.924(a)-(d). If the child's impairment(s) does not meet or medically equal a listed impairment, the fact-finder then must determine if the child's impairment(s) is functionally equivalent to the listings. 20 C.F.R. § 416.924(d); *see also* 20 C.F.R. § 416.926a (discussing functional equivalence). For the child's impairment(s) to functionally equal the listings, the child's impairment(s) must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. §§ 416.926a(a) and (d). A claimant has a "marked" limitation in a domain when his impairment(s) interferes seriously with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). In assessing functional equivalence, the fact-finder considers the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

In her decision, the ALJ noted that Plaintiff, born on August 11, 2019, was a "newborn/young infant" on January 16, 2020, the date his application was filed, and was an "older infant/toddler" at the time of the ALJ's decision (Tr. 16). 20 C.F.R. § 416.926a(g)(2)(i) and (ii). In rendering her decision, the ALJ applied the three-step process described above for evaluating claims for child's SSI based on disability under the Act (Tr. 16-25).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date, January 16, 2020 (Tr. 16). At step two, the ALJ found that Plaintiff's bilateral club foot, status post bilateral percutaneous heel cord tenotomy, and global developmental delay were severe impairments within the meaning of the Act (Tr. 16). The ALJ further found that Plaintiff's conjunctivitis of the right eye and COVID-19 were non-severe

3

impairments (Tr. 16). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings (Tr. 16-18). Specifically, the ALJ found that Plaintiff's bilateral clubfoot did not meet or medically equal Listing 101.18 (Tr. 17). The ALJ also considered Listing 112.14 for developmental disorders in infants and toddlers but found that Plaintiff's global developmental delay did not meet or medically equal the listing (Tr. 17).

The ALJ further found that Plaintiff's condition did not functionally equal any listed impairment (Tr. 18-25). Specifically, the ALJ found that Plaintiff had no limitation in acquiring and using information, no limitation in attending and completing tasks, less than a marked limitation in interacting and relating with others, less than a marked limitation in moving about and manipulating objects, no limitation in the ability to care for himself, and no limitation in health and physical well-being. (Tr. 19).

The ALJ considered Plaintiff's mother's testimony about what tasks and activities Plaintiff could and could not perform (Tr. 20). The ALJ also considered various treatment notes, reports of physical therapy, a consultative examination, and the opinions of State agency medical and psychological consultants (Tr. 18-25). The ALJ cited record evidence supporting her determination that Plaintiff's limitations in all six domains were less than marked and concluded that Plaintiff was not disabled under the law (Tr. 25).

The relevant standard this Court must use to evaluate the ALJ's decision is that of substantial evidence. The correct application of that standard means that even if someone might disagree with the conclusion, and even if it means the difference between a finding of "disabled" or "not disabled," this Court must nevertheless uphold that decision if it is supported by substantial evidence. Under the applicable substantial evidence standard of review, an "agency's findings of

facts are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary". *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020).

In support of remand, Plaintiff argues that the ALJ erred in her analysis of Plaintiff's symptoms. For a proper symptom analysis, an ALJ must follow a two-step process. First, the ALJ must determine whether there is an impairment or combination of impairments, established by medically acceptable clinical or laboratory diagnostic techniques, which could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. § 416.929(b); Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *3-4 (S.S.A. 2017). Second, the ALJ must then evaluate the intensity and persistence of those symptoms, including the extent to which they limit a child's ability "to function independently, appropriately, and effectively in an age-appropriate manner." 20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, at *4-5. When considering the intensity and persistence of an individual's symptoms, an ALJ must consider all available evidence. 20 C.F.R. § 416.929(c)(1); SSR 16-3p, 2017 WL 5180304, at *5-8. This includes medical opinions, objective medical evidence, and "other" evidence, with factors for evaluation including the claimant's daily activities; location, duration, and frequency of symptoms; precipitating and aggravating factors; type and effectiveness of medication; treatment other than medication; and other measures taken to relieve symptoms. 20 C.F.R. § 416.929(c)(3). An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Plaintiff bears the burden of demonstrating that the ALJ's subjective symptom evaluation was patently wrong. *Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018).

Here, the ALJ's decision shows that she followed both steps of this process and properly evaluated Plaintiff's subjective symptoms (Tr. 19). The ALJ began her discussion of Plaintiff's

5

symptoms by considering statements and testimony by Plaintiff's mother, including information about his medical treatment; his ability to smile and respond to her voice; his ability to make babbling sounds, grunt, and point at objects; his attempt to use a spoon and pick up small objects like Cheerios (Tr. 20, 40-41, 311). Plaintiff's mother indicated that he would drop a toy or object if he tried to transfer it between hands, and that he could not follow simple orders (Tr. 20, 41). Plaintiff's mother also testified that he would call her if he experienced pain, and he would hold his feet (Tr. 20, 42). Additionally, he could wave bye-bye and shake his head no; he could show what he wanted by pointing or grunting; he could sit without support; he could pull himself up on furniture and walk while holding onto furniture; and he could crawl, even if he were in pain (Tr. 20, 42-43). She also indicated that he could throw balls and play peekaboo, but he could not turn pages of a book or build a tower of blocks (Tr. 20, 43-44).

       The ALJ also described Plaintiff's treatment history, including records demonstrating that he was born with bilateral clubfoot (Tr. 23). According to the record, Plaintiff's clubfoot improved after physical therapy, casting, and use of a Mitchell bar and shoes (Tr. 23). The ALJ noted that a December 2019 examination revealed that Plaintiff's right foot could be flexed past neutral (Tr. 23, 306). A February 2020 examination indicates that Plaintiff displayed normal muscle tone and muscle strength; he had "full, painless range of motion of all major muscle groups and joints," and a neurological exam was normal for his age (Tr. 23, 312). Plaintiff attended physical therapy, and his mother was advised on how to do stretches of the right ankle (Tr. 23, 432). According to an August 2020 orthopedic record, Plaintiff's mother thought that physical therapy was helping (Tr. 469). The record indicates that Plaintiff has "done well without significant difficulties" (Tr. 23, 469).

       As the ALJ acknowledged, records also indicate that Plaintiff was diagnosed with a

6

global developmental delay (Tr. 24). However, Plaintiff could smile at faces he knew, cuddle in the arms of his parents or caregivers, reach out to be picked up, and hold small objects between his fingers (Tr. 24, 189-90).

According to a March 2020 report, Plaintiff's daily activities included sitting in his activity chair for an hour a day, watching television for an hour a day, and spending approximately 20 minutes in his jumper with adult supervision (Tr. 24, 193). He could play with small handheld toys such as a pacifier and small bath toys (Tr. 24, 193). At his age (less than one year old at the time his mother filled out the form), he needed help with his daily care, including dressing, eating, bathing, and brushing his hair and teeth (Tr. 24, 193).

The ALJ also considered the opinions of the State agency medical consultant, M. Ruiz, M.D., who opined at the initial level of administrative review that Plaintiff had no limitation in acquiring and using information, no limitation in attending and completing tasks, no limitation in interacting and relating with others, less than marked limitations in moving about and manipulating objects, no limitations in caring for himself, and no limitations in health and physical well being (Tr. 24, 64-65). The ALJ found Dr. Ruiz's opinion generally persuasive but found greater limitations in the domain of interacting and relating with others (Tr. 19, 24).

The State agency medical and psychological consultants affirmed Dr. Ruiz's opinion, except they assessed a less than marked limitation in the domain of moving about and manipulating objects (Tr. 24, 75-76). The ALJ found these opinions generally persuasive, as they were generally consistent with or supported by other evidence. 20 C.F.R. § 416.920c (discussing how medical opinions and prior administrative medical findings are considered). For example, as the ALJ noted, testing showed Plaintiff had a cognitive score of 110 (Tr. 24, 218). Additionally, Plaintiff's mother testified that he could throw balls, and he was able to play peekaboo by

7

throwing a blanket over another person's head (Tr. 24, 43). The ALJ also cited to the consultative examination report, which indicated that Plaintiff smiled and made eye contact with the examiner, and he could perform tasks and move from activity to activity with a positive mood (Tr. 24, 218). The ALJ also cited to an eight-week-old well-visit report, showing that Plaintiff could lift his head when in a prone position, hold his head temporarily erect, grasp a rattle when placed in his hand, and respond to loud sounds (Tr. 24, 323). Plaintiff was eating well, and he was voiding and stooling adequately (Tr. 22, 218, 323). He was sleeping five to six hours a night at that time, though he took naps during the day (Tr. 23-24, 218, 323).

After considering the evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but the allegations concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 20). The ALJ found Plaintiff's mother's statements partially persuasive (Tr. 24). The ALJ recognized that Plaintiff's mother was involved in Plaintiff's daily care and able to observe his activities of daily living (Tr. 24-25). However, the ALJ found that the record evidence did not support more limitations in any of the domains (Tr. 24-25). Ultimately, as noted above, the ALJ found no marked or extreme limitations in any of the domains of functioning (Tr. 19).

Despite the ALJ's analysis of the evidence, Plaintiff contends that his mother's "testimony and discussion of the claimant's limitations should have been credited" when evaluating his symptoms (Pl.'s Br. at 5). He argues that the ALJ's "failure to credit" his mother's statements and testimony "directly affects the domain analysis," particularly regarding the domains of health and physical well-being, caring for yourself, and moving about and manipulating objects (Pl.'s Br. at 5-7, 11). But in doing so, Plaintiff merely points to certain

evidence from the record and asserts that the ALJ does not explain why it would "not be considered a marked or extreme limitation" (Pl.'s Br. at 6-7). Plaintiff's approach fails to establish reversible error.

For example, Plaintiff contends that the ALJ did not present an "accurate representation" of his condition in September 2019 when he was hospitalized due to swollen toes from tight/poorly fitting casts (Pl.'s Br. at 5, citing Tr. 302). But as the ALJ's recitation of evidence demonstrates, the record shows that Plaintiff's toes were swollen after the casts were removed, but they were pink with good capillary refill (Tr. 20-21, citing Tr. 272). The ALJ then considered subsequent evidence documenting further treatment, including use of a Mitchell bar and shoes and physical therapy (Tr. 21-23). In April 2020, Plaintiff's mother reported that he was doing well with the Mitchell bar and shoes, and she subsequently noted that physical therapy was helping (Tr. 21-22, 363, 469). Plaintiff fails to show how the September 2019 record documents a marked or extreme limitation in the domain of healthy and physical well-being.

Similarly, Plaintiff disputes the consideration of "the sleep issue," arguing that the ALJ should have found that his use of a Mitchell bar constituted a marked or extreme limitation in the domain of caring for yourself (Pl.'s Br. at 6-7). However, the ALJ noted that Plaintiff "had issues sleeping due to his braces and cast on his limbs" (Tr. 22, 218). The ALJ further noted that Plaintiff "often looked restless at night and would sleep through the day with naps" (Tr. 22, 218). The State agency consultants assessed no limitation in the domain of caring for yourself based on the evidence they reviewed (Tr. 63-65, 74-76).

Plaintiff also contends that the ALJ did not properly credit statements about his inability to meet physical therapy goals and that his foot condition affects his sitting and walking. The ALJ, however, acknowledged record evidence concerning his physical therapy treatment and his ability

9

to sit, walk, and run. For example, the ALJ noted Plaintiff's mother's testimony that he could sit without support, pull himself up, walk while holding on to furniture, and crawl even if he were in pain (Tr. 18, 20-22). Additionally, the ALJ noted that record from May 2020 document painless range of motion and a normal neurological examination for his age (Tr. 22, 368). The ALJ also considered a February 2021 orthopedic follow-up exam, during which Plaintiff's mother reported he had frequent falls while running (Tr. 23, 532). A physical examination revealed that in his left lower extremity, his hindfoot was neutral, and there were straight mediolateral borders (Tr. 23, 532). His right lower extremity displayed metatarsus adductus and mild recurrence of clubfoot (Tr. 23, 532). With ambulation, the right hindfoot corrects to neutral and dynamic supination on the right (Tr. 23, 532-33). Tyler Christman, D.O., assessed Plaintiff with recurrent clubfoot on the right, and a stretching cast was placed on the right foot (Tr. 23, 533). Dr. Christman also prescribed a new pair of Mitchell shoes, as Plaintiff had outgrown the pair he was using, and otherwise assessed no restrictions (Tr. 23, 533).

      This Court agrees with the Commissioner that the ALJ properly analyzed the six domains of functioning (Tr. 18-25). The decision shows that the ALJ incorporated Plaintiff's mother's statements and testimony throughout her analysis and when considering Plaintiff's functional domains. The ALJ properly found that Plaintiff did not have marked or extreme limitations in any of the childhood domains of functioning (Tr. 18-25). This finding was consistent with the State agency reviewers, who evaluated the record in April and September 2020 (Tr. 64-65, 75-76). The ALJ's decision and functional domain findings are consistent with Plaintiff's history and consider his array of symptoms and the way in which they affect his ability to function independently, appropriately, and effectively in an age-appropriate manner. This Court rejects Plaintiff's invitation to re-weigh the evidence or substitute its own judgment for the ALJ's. *Powers v. Apfel*,

10

207 F.3d 431, 434-35 (7th Cir. 2000).

As there is no basis for remand, the decision will be affirmed.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: August 26, 2022.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court